UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| HIGH STREET INVESTMENTS LLC, | : | |
| Plaintiff, | : | |
| v. | : | Case No. |
| UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff High Street Investments LLC, by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated January 6, 2026, issued by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on High Street Investments LLC's retail food store, High Street Food Mart, and precluding its participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2. Plaintiff High Street Investments LLC is a Wisconsin corporation.

3. Plaintiff High Street Investments LLC is a resident and citizen of the State of Wisconsin.

4. Plaintiff High Street Investments LLC is the owner of High Street Food Mart, a retail food store located at 704 High Street, Racine, Wisconsin 53402 ("High Street Food Mart").

5. High Street Food Mart is a "Retail Food Store" as defined in 7 C.F.R. § 271.2.

6. Defendant United States of America is the federal government.

7. USDA is an executive branch department of the federal government.

8. FNS is an agency of the USDA.

9. FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

10. Formerly known as the Food Stamp Program, SNAP provides supplemental nutrition benefits to nearly 42 million Americans and more than 682,500 residents of Wisconsin. SNAP aims to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

11. Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participating in SNAP.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

13. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because High Street Food Mart, the retail food store that is the subject of this action, is located in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

14. High Street Food Mart has exhausted all applicable administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

15. High Street Food Mart is a convenience store that serves an impoverished community in Racine.

16. At all times relevant hereto, High Street Food Mart is and has been authorized by FNS to participate in SNAP as an authorized retailer.

17. At all times relevant hereto, High Street Food Mart has trained its employees regarding SNAP in accordance with FNS requirements.

18. At all times relevant hereto, High Street Food Mart properly supervised its employees regarding SNAP transactions and program requirements.

19. At all times relevant hereto, High Street Food Mart sold SNAP-eligible staple food items.

20. At all times relevant hereto, High Street Food Mart also sold SNAP ineligible items.

21. A majority of items sold at High Street Food Mart are (and were) SNAP-eligible items.

22. The Food and Nutrition Act does not define "common ineligible items."

23. FNS's SNAP regulations do not define "common ineligible items."

24. FNS has not issued any publicly issued guidance defining "common ineligible items."

25. Plastic cutlery and dish soap are not "common ineligible items" under FNS's regulations or otherwise.

26. No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible items at comparable prices.

27. At all times relevant hereto, High Street Food Mart is and has been authorized by FNS to redeem SNAP benefits. High Street Food Mart's FNS-issued SNAP authorization number is #0855514.

28. On or about July 14, 2025, FNS's Retailer Operations Division ("ROD") sent High Street Food Mart a letter charging the Store with accepting SNAP benefits in exchange for common ineligible non-food items, in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

29. The Charge Letter alleged that High Street Food Mart sold plastic cutlery and dish soap on one occasion on April 28, 2025.

30. On July 30, 2025, High Street Food Mart submitted its response to the Charge Letter.

31. On September 8, 2025, FNS issued its initial determination ("Initial Determination"). In the Initial Determination, FNS concluded that the alleged violations set forth in the attachments to the Charge Letter occurred, declined to issue a warning or assess a Hardship CMP, and disqualified the Store from participating in SNAP for six months.

32. The Initial Determination, which consisted of a short form letter, advised that FNS found that "the violations occurred at your store."

33. On September 13, 2025, High Street Food Mart timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

34. On September 30, 2025, High Street Food Mart submitted its response in support of its Request for Administrative Review of the Initial Determination ("High Street Food Mart's Response").

35. High Street Food Mart's Response requested that FNS's Administrative and Judicial Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP.

36. On January 6, 2026, FNS Administrative Review Officer ("ARO") Robert T. Deegan issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

37. In its FAD, FNS rejected all of High Street Food Mart's arguments, notwithstanding the evidence submitted by the Store, and affirmed the Initial Determination that imposed a six-month term disqualification from SNAP upon High Street Food Mart.

38. The FAD failed to address High Street Food Mart's argument that plastic cutlery and dish

4

Case 2:26-cv-00110-WED    Filed 01/21/26    Page 4 of 16    Document 1

soap are not "common ineligible items."

39. The FAD rejected High Street Food Mart's argument that the management of the Store was not careless and did not poorly supervise its employees, concluding "had store ownership and/or management been supervising this employee through occasionally monitoring this employee using videotape, if available, or in person, it would have readily noticed that this employee was allowing the sale of ineligible nonfood items in exchange for SNAP benefits. It also would have been immediately evident to store ownership and/or management that this employee was deficient in his knowledge of SNAP rules and regulations had it periodically spot checked this employee's knowledge and abilities by asking questions about SNAP eligible/ineligible items. Either of these basic supervisory techniques would have provided a no cost method for store ownership and/or management to ensure that store employees were not putting the firm's SNAP license at risk. These are clear signs of poor or no supervision by store ownership and/or management." FAD at 6.

40. The FAD also concluded that "the change by the Office of Retailer Operations and Compliance to imposing a sanction based on one violation at one point in time has been reviewed by Departmental officials and was found to be supported by the statute and regulations. *This is less a policy change and more a situation of enforcement discretion*. Based on this discussion, the decision by the Office of Retailer Operations and Compliance to disqualify the firm for a six month period was the appropriate penalty and there is no valid basis for dismissing the charges or for mitigating the penalty imposed." FAD at 7.

41. ARO Deegan did not conduct any independent analysis of the allegations set forth in the Charge Letter and merely relied upon the undercover investigator's report.

42. The FAD failed to meaningfully address High Street Food Mart's argument that a warning

was appropriate.

43. The FAD rejected High Street Food Mart's argument that a CMP was appropriate, noting only that the Retailer Operations Division allegedly determined that there were thirteen other SNAP-authorized stores within a one-mile radius of High Street Food Mart. *Id.* at 7.

44. The FAD improperly relied upon the Retailer Operations Division's determination, and ARO Deegan did not conduct her own independent analysis.

45. Despite ARO Deegan's conclusions, FNS's SNAP Retailer Locator indicates that there are only five other SNAP-authorized retailers within ½ mile of the Store.

## FNS's SNAP REGULATIONS

46. Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sanctioned for accepting SNAP benefits in exchange for "common ineligible items due to carelessness or poor supervision" (emphasis added) is a six-month term disqualification from participation in SNAP.

47. FNS is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7).

48. Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

49. Plaintiff repeats and re-alleges paragraphs 1 through 48 as if fully set forth herein.

50. High Street Food Mart denies that it engaged in violations of FNS's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

51. High Street Food Mart did not sell any "common ineligible items" in exchange for SNAP

benefits.

52. At no time did High Street Food Mart poorly supervise its employees.

53. No evidence in the Administrative Record supports FNS's determination that High Street Food Mart poorly supervised its employees.

54. At no time did High Street Food Mart act carelessly in permitting the sale of "common ineligible items" in exchange for SNAP benefits.

55. No evidence in the Administrative Record exists that supports FNS's determination that High Street Food Mart acted carelessly in permitting the sale of "common ineligible items" in exchange for SNAP benefits.

56. FNS's determination that High Street Food Mart sold "common ineligible items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

57. FNS's determination that High Street Food Mart poorly supervised its employees was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

58. FNS's determination that High Street Food Mart acted carelessly in permitting "common ineligible items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and, capricious, and unsupported by the evidence.

59. FNS's six-month disqualification of High Street Food Mart's participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence. *See Kim v. United States*¸ 903 F. Supp. 118 (D.D.C. 1995) (reversing FNS's imposition of a six-month term disqualification where there was no evidence of intent, no evidence that a pattern of selling ineligible items due to carelessness existed, no prior warnings were given, and no trafficking took place).

60. FNS's six-month disqualification of High Street Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

61. FNS failed to properly investigate and consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

62. FNS's six-month disqualification of High Street Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

63. FNS's use of a one- mile radius of High Street Food Mart for determining whether other stores in the vicinity sold as many staples at comparable prices was arbitrary and capricious.

64. FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at High Street Food Mart resided.

65. FNS officials and employees did not visit other SNAP-authorized stores in the vicinity in April 2025.

66. FNS did not conduct a comparison of prices of staple food items at High Street Food Mart and other SNAP-authorized stores in the vicinity in April 2025.

67. FNS's six-month disqualification of High Street Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity (1) failed to consider where SNAP beneficiaries who shopped at High Street Food Mart resided; and (2) was not based, upon information and belief, on store visits to other SNAP-authorized retailers in the vicinity in April 2025.

68. FNS's six-month disqualification of High Street Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis was not based on a comparison of (a) prices charged for staple food items or (b) the variety of staple food items at High Street Food Mart and the other SNAP-authorized stores within ½ mile of the Store in April 2025.

69. FNS's six-month term disqualification of High Street Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview any SNAP beneficiaries whose EBT cards were used at the store in April 2025.

70. FNS's six-month term disqualification of High Street Food Mart from participating in SNAP was improper because it was not based on evidence that High Street Food Mart poorly supervised its employees.

71. FNS's six-month term disqualification of High Street Food Mart from participating in SNAP was improper because FNS had no evidence that High Street Food Mart acted carelessly in permitting the exchange of nonfood items for SNAP benefits.

72. FNS's denial of High Street Food Mart's request for a Hardship CMP was not rationally related to any legitimate governmental interest.

73. FNS's denial of High Street Food Mart's request for a Hardship CMP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

74. FNS's failure to issue a warning to High Street Food Mart based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

75. FNS's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

76. FNS's denial of High Street Food Mart's request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

77. 7 C.F.R. § 278.6(e)(5), is inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(2) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

78. To the extent that 7 C.F.R. § 278.6(e)(5) purports to provide criteria for the disqualification of a SNAP-authorized retailer food store based on the sale of SNAP-ineligible items, those criteria are inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(1) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

79. FNS's denial of High Street Food Mart's request for a Hardship CMP, which was based entirely upon circumstantial evidence, represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

80. District courts must exercise independent judgment in deciding whether an agency has acted within its statutory authority. *Loper Bright v. Raimondo*, 369 U.S. 369 (2024).

81. District courts should no longer grant deference to agency actions.

82. District courts should set aside agency actions that are unsupported by substantial evidence.

83. FNS's decision to deny the Plaintiff's request for a hardship civil money penalty exceeded its authority under the Food & Nutrition Act of 2008.

84. FNS's decision to deny the Plaintiff's request for a hardship civil money penalty exceeded

its authority under its SNAP regulations.

85. FNS's decision to deny the Plaintiff's request for a hardship civil money penalty was not supported by substantial evidence.

86. At no time did FNS provide High Street Food Mart with a warning that non-food items were sold at the Store on April 28, 2025, in exchange for SNAP benefits prior to issuance of the Charge Letter.

87. FNS should have provided High Street Food Mart with a warning that non-food items, including (but not limited to) plastic cutlery and dish soap, are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

88. FNS should have provided High Street Food Mart with a warning that non-food items, including (but not limited to) plastic cutlery and dish soap, were being sold at the Store in exchange for SNAP benefits after the first alleged violation and before issuing a Charge Letter.

89. In the event that FNS had provided High Street Food Mart with a warning that non-food items were sold on April 28, 2025, at the Store in exchange for SNAP benefits after the first alleged violation, no further violations would have occurred.

90. In the event that FNS provided High Street Food Mart with a warning that non-food items, specifically plastic cutlery and dish soap, were being sold at the Store in exchange for SNAP benefits after the first alleged violation, High Street Food Mart would have re-trained its employees regarding SNAP requirements.

91. FNS had no basis to have concluded that plastic cutlery and dish soap are "common ineligible items."

92. A SNAP retailer charged with the exchange of common ineligible items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other

SNAP-authorized retail food stores in the vicinity selling as large a variety of staple food products at comparable prices.

93. Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at High Street Food Mart or any other SNAP-authorized retailer in the vicinity in April 2025.

94. Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at High Street Food Mart.

95. Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at other SNAP-authorized retailers in the vicinity.

96. No other SNAP-authorized retailer in the vicinity sells as wide a variety of SNAP-eligible items at comparable prices as High Street Food Mart.

97. FNS's decision to deny High Street Food Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

98. FNS's decision to deny High Street Food Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

99. FNS's decision to deny High Street Food Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

100. Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether

to grant a Hardship CMP.

101. Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

102. 7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." (emphasis added).

103. FNS, in issuing the FAD, relied upon records and other information never provided to High Street Food Mart.

104. In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

105. Upon information and belief, in urban areas, FNS currently uses (or under recently, used) a half-mile radius to determine whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP.

106. FNS calculates distance "as the crow flies," not walking or driving distance, when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

107. FNS's use of a ½ mile radius in urban areas for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes is arbitrary and capricious.

108. FNS's use of a ½ mile radius for determining whether other SNAP retailers are "in the vicinity" for Hardship CMP purposes ignores that many SNAP beneficiaries do not have cars

13

and do not (and cannot) walk up to a mile (round trip) to shop at a SNAP-authorized retailer.

109. No SNAP beneficiary, especially those who are elderly or disabled, can be reasonably expected to walk as much as one mile (each way) to shop at the unidentified stores referenced in the FAD.

110. No factual support exists for FNS's decision to deny High Street Food Mart's request for a Hardship CMP.

111. FNS relied upon undisclosed analyses, including analyses of other SNAP-authorized retail food stores, which were never provided to High Street Food Mart.

112. The FAD was not based upon any declarations or affidavits from a USDA or FNS employee or contractor whose identity was disclosed to High Street Food Mart.

113. The FAD is FNS's final administrative determination that its six-month disqualification of High Street Food Mart from participation as an authorized SNAP retailer was properly imposed.

114. The FAD is subject to judicial review and a trial *de novo* on all issues pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

115. Judicial reviews pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act, and the evidence is not limited to the administrative record prepared by FNS.

116. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

117. The FAD was based on SNAP regulations promulgated by FNS in excess of authority granted to it (and USDA) by Congress.

118. FNS incorrectly determined that High Street Food Mart was not eligible for a Hardship CMP, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

119. FNS's denial of High Street Food Mart's request for a Hardship CMP was premised upon an erroneous, unsupportable, arbitrary, and capricious interpretation of 7 C.F.R. § 278.6.

120. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to High Street Food Mart.

121. Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the term disqualification of High Street Food Mart's store from SNAP and determined that the alleged violations took place.

122. Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

123. Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.

WHEREFORE, Plaintiff High Street Investments LLC respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States and issue an Order granting the following relief:

(a) Reversing the FAD;

(b) Vacating FNS's Initial Determination;

(c) Declaring the FNS's policy of not obtaining data to determine whether other SNAP-authorized stores in the area sell as large a variety of staple food items at comparable prices is arbitrary and capricious, is inconsistent with the Administrative Procedure Act and the Food & Nutrition Act of 2008, and exceeds the authority delegated by Congress therein;

(d) Declaring that FNS's use of a one-mile radius from a retail food store when making a Hardship CMP determination is arbitrary and capricious;

(e) Preliminarily enjoining FNS from disqualifying High Street Food Mart from participating in SNAP during the pendency of this action;

(f) Permanently enjoining FNS from denying High Street Food Mart's authorization to participate in SNAP based upon the Initial Determination and the FAD;

(g) In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in an amount consistent with FNS's regulations;

(h) Awarding High Street Investments LLC an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(i) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 21st day of January 2026.

By: */s/* Stewart D. Fried
Stewart D. Fried, Esq.
Florida Bar # 057584
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, DC 20006
Telephone: 202.518.6326
Facsimile: 202.234.3550
sfried@ofwlaw.com

*Attorneys for Plaintiff High Street Investments LLC*